UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHEILA KILROY,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　Case No.:  6:21-cv-203-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff Sheila Kilroy seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.　Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.　Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v.*

*Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

C.   **Procedural History**

Plaintiff filed an application for supplemental security income benefits on September 6, 2019, alleging disability beginning on February 28, 2018. (Tr. 71, 179-185). The application was denied initially and on reconsideration. (Tr. 71, 90).

Plaintiff requested a hearing and on August 26, 2020, a hearing was held before Administrative Law Judge ("ALJ") Eric S. Fulcher. (Tr. 32-55). On October 13, 2020, the ALJ entered a decision finding Plaintiff not under a disability since September 6, 2019, the date the application was filed. (Tr. 15-25).

Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on December 1, 2020. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on January 29, 2021, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 24).

### D.   Summary of ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 6, 2019, the application date. (Tr. 17). At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical and lumbar spine (17E/10, 12F, 14F/8, 15F); cervical radiculopathy (11F/7, 19F/27); degenerative joint disease of the left knee (13F/17); mitral valve prolapse (11E/4); supraventricular tachycardia with syncope (8E/12, 8E/17); anemia (8E/12); bilateral ulnar motor axonal neuropathy (11F/7, 19F/27); bilateral carpal tunnel syndrome (9F/4); major depressive disorder (8F/5); anxiety disorder (8F/5, 13F/5); attention-deficit/hyperactivity disorder (8F/5); antisocial personality features (8F/5); [and]

polysubstance drug abuse (17F/97), (20 CFR 416.920(c))." (Tr. 18). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. 18).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 416.967(b) with exceptions. With both upper extremities, she can frequently operate hand controls, handle and reach in all directions, including overhead. The claimant can occasionally climb ramps and stairs. She can never climb ladders, ropes or scaffolds. The claimant can frequently balance. She can occasionally stoop, kneel, crouch and crawl. The claimant can have no exposure to unprotected heights or moving mechanical parts. She can have occasional exposure to extreme cold, extreme heat and vibration. The claimant can perform simple, routine tasks involving up to detailed, but uninvolved instructions. She can frequently interact with supervisors, coworkers and the public.

(Tr. 19).

At step four, the ALJ found Plaintiff was unable to perform any past relevant work as a server. (Tr. 22-23). At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age (45 on the application date), education (at least high school), work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform.

(Tr. 23). Specifically, the ALJ found that Plaintiff could perform such occupations as:

    (1)   routing clerk, DOT 222.587-038, light, SVP 2

    (2)   ticket taker, DOT 344.667-010, light, SVP 2

    (3)   merchandise marker, DOT 209.587-034, light, SVP 2

(Tr. 24). The ALJ concluded that Plaintiff had not been under a disability since September 6, 2019, the date the application was filed. (Tr. 24).

## II.   Analysis

On appeal, Plaintiff raises a single issue: whether the ALJ adequately evaluated Dr. Arriola's opinion. (Doc. 23, p. 12). The Commissioner contends that the ALJ complied with the revised regulations and sufficiently evaluated Dr. Arriola's opinion.

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or give any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 404.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520(c)(2); 20 C.F.R. 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. § 404.1513(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. § 404.1513(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. 404.1513(a)(3).

In March and April 2020, Plaintiff saw neurosurgeon Gustavo Arriola, M.D. (Tr. 712-15, 794-96). In March, Plaintiff complained of chronic neck pain that extended into her arms bilaterally with numbness and tingling extending into the third, fourth, and fifth fingers in both hands. (Tr. 712). She also complained of pain radiating from the elbows into her hands, which was worse on the left than on the right. (Tr. 712). Plaintiff additionally complained of weakness of both hands with decreased grip strength. (Tr. 712). She claimed her neck pain was aggravated by activity and mildly relieved by rest and support. (Tr. 712). Dr. Arriola noted that Plaintiff underwent an EMG and nerve conduction studies of both upper extremities in January 2020, and the findings reflected a bilateral C5-6 radiculopathy along with

bilateral ulnar neuropathy. (Tr. 712). On examination, Dr. Arriola found Plaintiff's neck supple with limited range of motion particularly on the right lateral flexion and rotation. (Tr. 713). He found no evidence of pitting edema in the extremities and found 5 of 5 strength throughout all muscle groups tested in both upper and lower extremities. (Tr. 713-14). Dr. Arriola diagnosed Plaintiff with cervical radiculopathy at C6, cervical myofascial pain syndrome, and ulnar neuropathy of both upper extremities. (Tr. 714). He suggested additional imaging studies of the cervical spine and physical therapy. (Tr. 714).

At the April visit, Dr. Arriola had the opportunity to review an MRI scan of the cervical spine. (Tr. 794). He found it showed degenerative disc disease and a large extruded left paracentral disc herniation at C4-5 with compression of the thecal sac and foraminal narrowing, and found similar but less severe changes at C5-6. (Tr. 794). According to Dr. Arriola, these results tracked her current clinical symptomatology of left-sided neck pain, radicular pain, and numbness and tingling extending down the left upper extremity going into the hand. (Tr. 794). Plus, her ulnar neuropathy contributed to her symptoms. (Tr. 794). On examination, Plaintiff's neck was stiff with limited range of motion. (Tr. 795). Her extremities were grossly within normal limits, she had 5 of 5 strength in both upper and lower extremities, and decreased sensation to pinprick in C5 and C6 distribution on the left. (Tr. 795-96). His diagnosis remained the same and he again requested she begin physical

therapy. (Tr. 796). He also added that "[a]t present she is temporarily totally disabled for work." (Tr. 796). On April 7, 2020, Dr. Arriola confirmed that statement in a letter finding "Mrs. Kilroy is temporarily totally disabled due to her condition." (Tr. 1058).

On September 2, 2020, Dr. Arriola completed a Physical Medical Source Statement. (Tr. 1125-28). In pertinent part, he found Plaintiff's symptoms included neck and arm pain and numbness. (Tr. 1125). He found Plaintiff could: sit and stand more than 2 hours at one time; sit for 6 hours and stand for 4 hours in a workday; lift 10 or less pounds frequently, 20 pounds occasionally, and 50 pounds rarely; and occasionally twist stoop/bend, crouch/squat, climb stairs, and climb ladders. He found Plaintiff had no restrictions for hands, fingers, and arms on the right side; but on the left, she could grasp, turn, and twist objects and do fine manipulations 40% of a work day; and reach in front and overhead with the left arm 10% of a workday. (Tr. 1125-28).

In the decision, after considering Dr. Arriola's treatment notes, the April 2020 letter, and the September 2020 opinion, the ALJ found Dr. Arriola's opinions not fully persuasive:

> Gustavo Arriola, M.D. . . .treated [Plaintiff] for neck and arm pain due to cervical degenerative disc disease with radiculopathy. Dr. Neurohealth [sic] opined she could sit for no more than two hours at a time and she could stand for no more than two hours at a time. He also noted the claimant would have difficulty with reaching due to her cervical spine

>
> problems. While the reaching limitations are supported the degree of restricted sitting and standing is at odds with advice to engage in regular exercise. His treatment notes show that his care was limited to problems related to her neck so the assertion that she is totally disabled, even temporarily, are not supported and he failed to explain how he came to that conclusion. Moreover, the determination of disability is reserved to the Commissioner. Dr. Arriola is not a vocational expert and therefore unqualified to say whether there is work the claimant can perform given her physical limitations. Additionally, the claimant has not asserted limitations to this degree and there are generally normal examination findings documented throughout the record. For these reasons, the opinion is not fully persuasive (Exhibits 17E, 1F, 3F, 18F, 20F).

(Tr. 22).

Plaintiff argues that the ALJ committed four errors. First, Plaintiff claims the ALJ made inconsistent findings related to reaching limitations. (Doc. 23, p. 14). Second, the ALJ mistakenly found that Plaintiff had not asserted limitations to the degree Dr. Arriola alleged. (Doc. 23, p. 14). Third, the ALJ erred in finding that the treatment notes of record showed generally normal findings. (Doc. 23, p. 15). And finally, the ALJ erred in determining that Dr. Arriola's September 2020 opinion addressed an issue reserved for the Commissioner. (Doc. 23, p. 16).

First, Plaintiff claims that the ALJ made inconsistent findings about reaching limitations. (Doc. 23, p. 14). Plaintiff contends that Dr. Arriola limited Plaintiff to reaching in front of her body and overhead to 10% of a workday. (Doc. 23, p. 14; Tr. 1128). Plaintiff argues that while the ALJ found "the reaching limitations [were] supported," he limited Plaintiff's RFC for upper extremities "to frequently operate

hand controls, handle and reach in all directions, including overhead." (Doc. 23, p. 14; Tr. 22). And Plaintiff argues that "frequently" means up to two-thirds of the workday, an amount exceeding 10%. (Doc. 23, p. 14); *see* SSR 83-10 ("'Frequent'" means occurring from one-third to two-thirds of the time.").

To start, the ALJ found Dr. Arriola's opinion not fully persuasive. (Tr. 22). And while true that the ALJ found Plaintiff's limitations for reaching supported, that does not mean that he was required to adopt Dr. Arriola's findings as to the extent of these limitations. *See* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."); *see also Freyhagen v. Comm'r of Soc. Sec.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019) ("However, the ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source (especially when that source's opinion has been discredited), because the responsibility of assessing the RFC rests with the ALJ."). After considering all of the medical evidence, the ALJ discredited Dr. Arriola's opinion by finding it not fully persuasive. But the ALJ did find limitations in reaching and handling supported by the record, and included those limitations in the RFC, such as limitations to frequently operating hand controls, handling, and reaching in all directions,

including overhead. (Tr. 19). Substantial evidence supports the ALJ's determination as to Plaintiff's limitations for reaching and handling.

Plaintiff challenges the ALJ's statements that Dr. Arriola's September 2020 opinion addressed an issue reserved for the Commissioner. (Doc. 23, p. 16). In the decision, the ALJ states: "[Dr. Arriola's] treatment notes show that his care was limited to problems related to her neck so the assertion that she is totally disabled, even temporarily, are not supported and he failed to explain how he came to that conclusion." (Tr. 22). From this statement, it is clear that the ALJ was referring to Dr. Arriola's statement dated April 7, 2020, that "Mrs. Kilroy is temporarily totally disabled due to her condition." (Tr. 1058). The ALJ then continues: "[m]oreover, the determination of disability is reserved to the Commissioner" and notes Dr. Arriola is not a vocational expert and is not qualified to determine whether work exists for Plaintiff. (Tr. 22). Again, these statements refer to Dr. Arriola's April 2020 letter finding Plaintiff temporarily totally disabled, not the September 2020 Physical Medical Source Statement. As a result, Plaintiff's argument fails.[1]

Next, Plaintiff contends the ALJ erred in finding Plaintiff had not asserted limitations to the degree Dr. Arriola alleged. (Doc. 23, p. 14-15). After finding Dr.

---

[1] In a footnote, Plaintiff states, "[b]ecause that [April 2020] letter did not include any functional limitations and addressed the ultimate issue of disability, the ALJ properly declined to consider it." (Doc. 23, p. 16, n.2). But based on the plain language of the decision, the ALJ did discount the April 2020 opinion.

Arriola's opinion that Plaintiff was temporarily totally disabled a matter reserved for the Commissioner, the ALJ continues with "[a]dditionally, the claimant has not asserted limitations to this degree and there are generally normal examination findings . . ." (Tr. 22). In context, arguably "this degree" again refers to Dr. Arriola's April 2020 opinion that Plaintiff was temporarily totally disabled. In any event, Plaintiff argues that her hearing testimony supports her allegations. (Doc. 23, p. 14). Plaintiff testified she could not hold objects for more than 10 seconds, and could not stand or walk for prolonged periods of time. (Doc. 23, p. 14 (citing Tr. 40, 42-43)). Even so, in her Function Report, Plaintiff reported she did light housework, laundry, fed a cat and dog, cleaned a litter box, prepared food daily including complete meals and frozen quick meals, did dishes, swept, cleaned mirrors, went outside daily, drove a car, and shopped for a few hours. (Tr. 262-65). To be fair, some of the household tasks could take all day depending on her pain level. (Tr. 264). But completing these tasks suggests that Plaintiff had not asserted limitations to the degree found by Dr. Arriola, especially in his April 2020 opinion. Thus, the ALJ's statement is supported by substantial evidence.

     Lastly, Plaintiff claims the ALJ erred in finding Plaintiff had generally normal examination findings. (Doc. 23, p. 15; Tr. 22). In support, Plaintiff cites some irregular findings such as an electromyogram that revealed that Plaintiff had bilateral ulnar motor axonal neuropathy and cervical radiculopathy, and a cervical MRI that

showed mild ventral cord impingement and compression of the thecal sac. (Doc. 23, p. 15). Plaintiff also cites some of Dr. Arriola's treatment notes that showed tenderness in Plaintiff's neck and diminished sensation in her upper extremities, and physical therapy notes that showed a decreased range of motion and strength in the cervical spine. (Doc. 23, p. 15). But the medical records also include repeated instances when Plaintiff had a supple neck with full range of motion and full motor strength in all extremities. (Tr. 641, 643, 645, 647, 649, 696, 731, 734, 737, 740, 743, 749, 753, 757, 755, 759, 761). Plaintiff must do more than point to evidence in the record that supports her allegations. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). She must show the absence of substantial evidence supporting the ALJ's conclusion. *Id.* Here, substantial evidence supports the ALJ's consideration of Dr. Arriola's opinions and substantial evidence supports the ALJ's RFC determination. Moreover, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021).

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on April 7, 2022.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties